FILED

2008 Mar-07  PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| SHEILA D. MCLEMORE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 06-G-0612-J |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

The plaintiff, Sheila D. McLemore, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable

by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520 (a)-(f). The Commissioner must determine in sequence:

(1)  whether the claimant is currently employed;

(2)  whether she has a severe impairment;

(3)  whether her impairment meets or equals one listed by the Secretary;

(4)  whether the claimant can perform her past work; and

(5)  whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993); accord  McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope, at 477; accord Foot v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995).

In the instant case, the ALJ, Jerry C. Shirley, determined the plaintiff met the first two tests, but concluded  did not suffer from a listed impairment. The

3

ALJ found the plaintiff unable to perform her past relevant work.  Once it is
determined that the plaintiff cannot return to his prior work, "the burden shifts to
the [Commissioner] to show other work the claimant can do."  <u>Foote</u>, at 1559.
When a claimant is not able to perform the full range of work at a particular
exertional level, the Commissioner may not exclusively rely on the Medical-
Vocational Guidelines (the grids).  <u>Foote</u>, at 1558-59.  The presence of a non-
exertional impairments (such as pain, fatigue or mental illness) also prevents
exclusive reliance on the grids.  <u>Foote</u>, at 1559.  In such cases "the
[Commissioner] must seek expert vocational testimony.  <u>Foote</u>, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a
claimant seeks to establish disability through his or her own testimony of pain or
other subjective symptoms."  <u>Foote</u>, at 1560.

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.

<u>Foote</u>, at 1560 (quoting <u>Holt v. Sullivan</u>, 921 F.2d 1221, 1223 (11th Cir. 1991).  In
this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the <u>Hand</u> standard require
> objective medical evidence of a condition that could reasonably be

4

expected to cause the pain alleged, <u>neither requires objective proof of
the pain itself</u>.  Thus under both the regulations and the first
(objectively identifiable condition) and third (reasonably expected to
cause pain alleged) parts of the <u>Hand</u> standard <u>a claimant who can
show that his condition could reasonably be expected to give rise to
the pain he alleges has established a claim of disability and is not
required to produce additional, objective proof of the pain itself</u>.  <u>See</u>
20 CFR §§ 404.1529 and 416.929;  <u>Hale</u> at 1011.

<u>Elam v. Railroad Retirement Bd.</u>, 921 F.2d 1210, 1215 (11th Cir.

1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must

be kept in mind that "[a] claimant's subjective testimony supported by medical

evidence that satisfies the pain standard is itself sufficient to support a finding of

disability."  <u>Foote</u> at 1561.  Therefore, if a claimant testifies to disabling pain and

satisfies the three part pain standard, he must be found disabled unless that

testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony,

he must articulate reasons for that decision.

It is established in this circuit that if the Secretary fails to articulate
reasons for refusing to credit a claimant's subjective pain testimony,
then the Secretary, as a matter of law, has accepted that testimony as
true.  Implicit in this rule is the requirement that such articulation of
reasons by the Secretary be supported by substantial evidence.

<u>Hale v. Bowen</u>, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ

either fails to articulate reasons for refusing to credit the plaintiff's pain testimony,

or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

In the present case, the plaintiff submitted additional evidence to the Appeals Council.  Claimants are permitted to submit new evidence at each step of the review process, 20 C.F.R. § 404.900(b)("In each step of the review process, you may present any information you feel is helpful to your case.  [W]e will consider at each step of the review process any information you present as well as all the information in our records.").  The Appeals Council is required to consider the entire record, "including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. § 404.970(b); Keeton v. Department of Health and Human Services, 21 F.3d 1064, 1066 (11th Cir. 1994).  Because the Appeals Council actually considered the evidence, the court will only review whether the Appeals Council committed reversible error in refusing to review the plaintiff's case in light of that evidence, and additionally, whether the decision of the Commissioner was supported by substantial evidence in light of that evidence.  The Regulations require the Appeals council to "review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."  20 C.F.R. § 404.970(b).  This court may consider

the evidence submitted to the Appeals Council to determine whether the decision
of the ALJ was supported by substantial evidence when the plaintiff also
challenges the decision of the Appeals council to deny review.  See, Ingram v.
Astrue, 496 F.3d 1253, 1266 (11th Cir. 2007)(finding Falge v. Apfel, 150 F.3d
1320 (11th Cir. 1988), inapplicable in such cases);  Maroney v. Apfel, 57 F. Supp.
2d 1250  (N.D. Ala. 1999).

## DISCUSSION

The plaintiff alleges she is disabled due to osteoarthritis in her knees,
carpal tunnel syndrome, migraines and anxiety disorder.  She has also had a
number of abdominal surgeries during the period in which she alleges disability.
Medical records show the plaintiff is sixty two inches tall and weighs in excess of
370 pounds.

## I

The plaintiff alleges she uses a four pronged cane because of her
weight and instability in her knees.  The ALJ refused to accept that she required a
cane, finding it inconsistent with the evidence.  However, this finding is not
supported by substantial evidence.  Physical therapy notes from January 30, 2003,
state the plaintiff "[c]ontinues to report falls [at] home [secondary] to 'giving way'
of [left] knee."  [R 546]  The note states that the plaintiff "will see if she can
borrow a walker from a family member."  [R 546]  Physical therapy notes from

January 31, 2003, states:  "Loaned [patient] a walker for home use, her family is looking for one for her to borrow."  [R 545]  Upper extremity exercises were added for "greater ease of use [with] walker."  [R 545]   Physical therapy notes from March 5, 3003, states:  "We did have her start ambulating [with] a quad cane [and] this has helped [decrease] the number of falls [patient] was experiencing."  [R 517]  Treatment notes from one of the plaintiff's treating physicians, Dr. Morrow, stated on October 17, 2003, [R 470] and on March 4, 2004, [R 463] that she required a quad cane.   The overwhelming evidence, therefore, is that the plaintiff requires the use of a cane for safe ambulation.  The ALJ's finding to the contrary is not supported by substantial evidence.  Because the hypothetical question posed to the VE did not incorporate the use of a cane, it does not provide substantial evidence to support the ALJ's finding that the plaintiff can do other work.  Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work.  Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

## II

The plaintiff was diagnosed with osteoarthritis in her left knee by her treating orthopedic surgeon, Dr. Dyas, on November 16, 2001.  [R 339]  The Commissioner's consultative examiner, Dr. Moizuddin, also diagnosed osteoarthritis in the plaintiff's knees.  [R 397]  Although the ALJ stated in his

opinion that the plaintiff's knee problems "continued to progress until she was released in November 2003...." [R 23]  A review of Dr. Dyas's treatment note of November 11, 2003, shows how misleading this remark is.  On that date, Dr. Dyas noted that although her right knee was doing well following surgery in July 2003, "[s]he has some catching, locking and giving way.  This is aggravating her back condition and right sided sciatica." [R 446]  Although orthopedic examination of the left knee found a good range of motion in the left knee, Dr Dyas also found "tenderness in the medial compartment" and the medial compartment grind test was positive. [R 446]  Dr. Dyas found 2+ effusion, but no ligamentous laxity. [R 446]  Examination of the plaintiff's spine revealed "a restricted range of motion of the lumbar spine, [and] tenderness in the right sciatic notch." [R 446]  Moreover, straight leg raising was positive.[1]  Dr. Dyas diagnosed "left knee sprain/early osteoarthritis, low back pain with degenerative disc disease/right sciatica and morbid obesity." [R 446]  The plaintiff was given a steroid injection to the left knee. [R 446]  Records before the ALJ show the plaintiff had four knee surgeries form March 2000 through September 2003.[2]  Therefore, the medical record

---

[1]  The SLR test is also known as Lasègue's sign:  "In sciatica, flexion of the hip is painful when the knee is extended, but painless when the knee is flexed.  This distinguishes the disorder from disease of the hip joint."  Dorland's Illustrated Medical Dictionary 1525 (28th Edition).

[2]  Medical records after the date of the ALJ's decision show the plaintiff continued
(continued...)

establishes the presence of at least one condition, osteoarthritis of the knees, that

could reasonably be expected to cause disabling pain.  Therefore, unless the

plaintiff has been properly discredited, her pain testimony must be accepted as

true.

In spite of the extensive and continuous history of knee problems, the

ALJ refused to credit her allegations of disabling knee pain.  ALJ Shirley's

consideration of the Eleventh Circuit pain standard is confusing at best.  After

noting the plaintiff alleged disability commencing January 7, 2002, due problems

including osteoarthritis in her knees, ALJ Shirley states as follows:

> Her statements are credible and consistent with the medical evidence
> as to positive diagnoses of degenerative joint disease of the knees,
> degenerative disk disease, and anxiety/depression.  However her
> allegations as to the severity and extent of her symptoms and
> limitations are not credible or consistent with the medical evidence,
> or with her statements as to her day-to-day activities and her
> capabilities.

[R 22]  The ALJ appears to be saying the plaintiff is credible and yet not credible

at the same time.  The record, however, reveals that the plaintiff's allegations of

disability due to knee pain and it's impact on her ability to ambulate are consistent

and are supported by the medical evidence of record.  It is unclear what day-to-day

---

[2] (...continued)
to suffer from knee problems. Dr. Dyas performed additional knee surgeries in September
2004, July 2005, and November 2005.

activities the ALJ believes are inconsistent with disabling osteoarthritis in her

knees.  Later in his decision, ALJ Shirley recites the following activities in finding

her not credible:

> She testified that she was married on September 23, 2003, and her
> husband helps her although he works outside the home, doing dishes
> and similar chores.  Her mother and father help with the housework
> and with her little boy.  This is consistent with the ability to maintain
> good social interaction, at least within her family.  She spends most of
> the day in a recliner with the legs up, or in bed;  she stays on her feet
> only about five minutes at a time.  The undersigned notes no evidence
> that any physician has advised her to so limit her activities, and in fact
> she has been instructed by Dr. Dyas to exercise.  She does not drive
> because of her legs and feet going numb when she sits.  However, she
> rides with family members, and although she testified that she has to
> sit sideways in the car so she can keep moving and keep the
> circulation to her legs, this is still consistent with the ability to
> perform sequential postural maneuvers to enter and exit a car or truck.
> She stated she can sit in the car while driving for only about ten
> minutes before her legs get numb, which is not consistent with the
> lack of limitation, discussed above, that Dr. Morrow placed on her
> ability to sit or with sitting in a recliner most of the time.

[R 28]  When the above is analyzed, it amounts to saying the plaintiff is not

credible because she was married, had help from her family with housework, and

can get in and out of a car.  Her allegations of an inability to drive are found not

credible because she is able to sit in a recliner most of the day.  The plaintiff's

reported daily activities are not inconsistent with the inability to work.

In this circuit it has been recognized that "participation in everyday

activities of short duration, such as housework or fishing" does not disqualify a

claimant from disability.  Lewis v. Callahan, 125 F.3d 1346, 1441 (11th Cir. 1997).

As has been noted:

> [S]tatutory disability does not mean that a claimant must be a
> quadriplegic or an amputee.  Similarly, shopping for the necessities of
> life is not a negation of disability and even two sporadic occurrences
> such as hunting might indicate merely that the claimant was partially
> functional on two days.  Disability does not mean that a claimant
> must vegetate in a dark room excluded from all forms of human and
> social activity.  . . . It is well established that sporadic or transitory
> activity does not disprove disability.

Smith v. Califano, 637 F.2d 968, 971-72 (3rd Cir. 1981)(emphasis added).  It is the

ability to engage in gainful employment that is the key, not whether a plaintiff can

perform minor household chores or drive short distances.  In Easter v. Bowen, the

court observed as follows:

> Moreover, an applicant need not be completely bedridden or unable
> to perform any household chores to be considered disabled. See
> Yawitz v. Weinberger, 498 F.2d 956, 960 (8th Cir.1974).  What
> counts is the ability to perform as required on a daily basis in the
> "sometimes competitive and stressful" environment of the working
> world.  Douglas v. Bowen, 836 F.2d 392, 396 (8th Cir.1987) (quoting
> McCoy v. Schweiker, 683 F.2d 1138, 1147 (8th Cir.1982) (en banc)).

867 F.2d 1128, 1130 (8th Cir. 1989).  The Easter court further noted that

"[e]mployers are concerned with substantial capacity, psychological stability, and

steady attendance . . . ."  867 F.2d at 1130 (quoting Rhines v. Harris, 634 F.2d

1076, 1079 (8th Cir.1980)).

The overwhelming medical evidence of record supports the plaintiff's allegations of disabling restrictions and pain due to osteoarthritis in her knees.  At the hearing she testified that she had to lie down four to five times a day, for a couple of hours each time.  This testimony is inconsistent with an ability to work. The ALJ's recited reasons for rejecting the plaintiff's testimony are not supported by substantial evidence.  Therefore it must be accepted as true and the plaintiff is disabled.

### III

The plaintiff's physical impairments and pain are undoubtably exacerbated by her extreme obesity.  Social Security Ruling 02-01p  is intended to "remind adjudicators that the combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately." Rather than considering the plaintiff's obesity in accordance with the Commissioner's procedures contained in SSR 02-01p, ALJ Shirley used her obesity to minimize her other disabling conditions.   ALJ Shirley's disdain for the rules set out in SSR 02-01p is apparent in that he did not even find the plaintiff's obesity to be a "severe" impairment.  At the time of the consultative examination by Dr. Moizuddin, the plaintiff was 5' 2" and weighed 340 pounds.  [R 395]  This represented a body mass index (BMI) of 57.  [R 395]  She subsequently gained

13

even more weight, and weighed in excess of 370 pounds.[3]  According to SSR 02-01p, a body mass index of 40 or greater equates to Level III obesity.  Level III, is "extreme obesity" and represents "the greatest risk for developing obesity related impairments."  SSR 02-01p.  An indication of the severity of plaintiff's obesity can be gleaned from the now deleted Listing 9.09.  The weight requirement for meeting that listing for a woman of plaintiff's height was 242 pounds.  This means that the plaintiff exceeded that weight by 100 to 135 pounds during the relevant period of time.  ALJ Shirley's failure to find the plaintiff's obesity was a severe impairment is irrational.

Throughout ALJ Shirley's decision there are references to the plaintiff's weight.  None are proper considerations of the vocational impact of plaintiff's obesity or of whether her obesity warranted a finding of medical equivalence under the Listings.  ALJ Shirley used the plaintiff's failure to lose weight in a fashion that suggests he believed her failure to lose weight represented a failure to follow treatment.  For example:

> The claimant also testified that her doctor told her if she lost a hundred plus pounds she would feel better.  This is consistent with frequent and persistent urging by her physicians that she lose weight. Dr. Dyas, noting osteoarthritis in her left knee, has advised her several times to lose weight.

---

[3]  This would equate to a BMI of 67.7.

[R 25]  However, SSR 02-01p makes clear that such suggestions do not amount to prescribed treatment:  "The treatment must be prescribed by a treating source ... not simply recommended.  A treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment."  SSR 02-01p; See also, McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988)( "A physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment . . . .")("[F]ailure to accomplish the recommended change [does not ]constitute a refusal to undertake such treatment.")("[O]besity, of itself, does not justify the conclusion that she has refused treatment . . . .")

ALJ Shirley's decision contains the following conclusory statement: "There is no evidence that her obesity, alone or in combination with any other impairment, has resulted in any limitations inconsistent with sedentary work-related activities, or with her ability to engage in a significant range of sedentary work."  This is not a proper application of SSR 02-01p.  Had ALJ Shirley consulted SSR 02-01p, he would find the following, which is highly relevant in the present case:

> The combined effects of obesity with other impairments may be greater than might be expected without obesity.  For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone.

15

A fair minded ALJ properly applying SSR 02-01p to the present case would almost certainly have found the plaintiff disabled due to the combined impact of her arthritis and obesity.  When all the plaintiff's impairments (including anxiety disorder and multiple abdominal problems) are considered together, no rational fact finder could find her not disabled based upon the medical evidence of record.

## CONCLUSION

Therefore, for these three independent reasons, the plaintiff is disabled within the meaning of the Social Security Act.  This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt." Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.   An appropriate order will be entered contemporaneously herewith.

DONE and ORDERED 7 March 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.